UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KRISTY WEBSTER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-529-RLY-WTL |
| | ) | |
| HILEX POLY CO., LLC and SCOTT SHIELDS, | ) ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and PLAINTIFF'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Kristy Webster ("Plaintiff"), brought suit against Hilex Poly Co., LLC ("Hilex Poly") and Scott Shields ("Shields") (collectively "Defendants") following her termination from employment, asserting that Defendants violated her rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and that Defendants discriminated against her in violation of the Americans With Disabilities Act, 42 U.S.C. § 12102 *et seq.* ("ADA"). Defendants now move for summary judgment, and Plaintiff cross moves for partial summary judgment on her FMLA interference claim. For the reasons explained below, the court **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment, and **DENIES** Plaintiff's Counter-Motion for Partial Summary Judgment.

**I.     Summary Judgment Standard**

Summary judgment is proper only if the record shows "that there is no genuine

1

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of informing the court of the basis for its motion and demonstrating the "absence of evidence on an essential element of the non-moving party's case," *Celotex Corp.*, 477 U.S. at 323, 325. To withstand a motion for summary judgment, the nonmoving party may not simply rest on the pleadings, but rather must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case, and on which that party will bear the burden of proof at trial. . ." *Id*. at 322. If the non-moving party fails to make this showing, then the moving party is entitled to judgment as a matter of law. *Id*. at 323.

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *See Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 264 (7th Cir. 1996). No genuine issue exists if the record viewed as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001).

**II.     Facts**

1.     Plaintiff was hired by Hilex Poly's North Vernon facility in August 2003 as a machine bag operator. (Plaintiff's Answer to Defendants' Amended Interrogatory No. 4; Deposition of Lisa Barton ("Barton Dep.") at 13).

2. At that time, she received a copy of an employee handbook, the FMLA policy of Hilex Poly, a document entitled "North Vernon Inter-Office Memorandum," and a document entitled "Healthcare Provider Certification of Medical Condition." (Plaintiff's Answer to Defendants' Amended Interrogatory No. 6).

### A. Hilex Poly's Attendance and FMLA Policies

3. Hilex Poly's attendance policy established an "occurrence system." (Deposition of Scott Shields ("Shields Dep.") at 16-19). Under this system, absences from work which were the result of scheduled vacation, funeral leave, industrial accidents, lack of work, military leave, disciplinary lay-off, FMLA or jury duty do not count against an employee as an occurrence. (*Id*. at 18). On the other hand, the following types of absences are classified as an "occurrence" of some degree:

(1) An absence with prior notice (1 occurrence);

(2) Consecutive days of absence due to the same documented personal illness (1 occurrence);

(3) An undocumented day of absence (1 occurrence);

(4) Approved personal leave (1 occurrence);

(5) Tardy up to 15 minutes (.25 occurrences);

(6) Tardy more than 16 minutes but not more than half the scheduled shift (.5 occurrence);

(7) Tardy and half of the employee's shift is over (1 occurrence);

(8) An employee leaves work early but has worked half of his or her shift (.5

        occurrence); and

        (9)    An employee leaves work early and has not worked half of his or her shift (1 occurrence).

(*Id*. at 16-17).

4. If an employee accumulates two occurrences in any 90 consecutive days, he or she is given a verbal warning. (*Id*. at 17). If the employee accumulates 1.5 occurrences within 90 days of the verbal warning, he or she receives a written warning. (*Id*.). If the employee receives 1.5 occurrences within 90 days of the written warning occurrence, the employee receives a three-day suspension or three days of mandatory overtime. (*Id*.). If the employee receives 1.5 occurrences within 90 days of a three-day suspension, he or she can be disciplined up to and including termination. (*Id*.). The policy also states that if an employee has more points than are required for a particular step in the disciplinary process, the excess points carry over and can be combined with the next occurrence to go to the next step. (*Id*.).

5. Hilex Poly had an oral policy setting six months as the maximum length of FMLA leave for long-term or chronic conditions where leave might be intermittent and indefinite. (*Id*. at 61-66, 70, 88, 92, 102-03; Barton Dep. at 62-66).

6. The FMLA paperwork required by Hilex Poly consisted of (1) the Health Care Provider Certification of Medical Condition (the "Certification of Medical Condition" or "certification documentation") and (2) the Employer Response to

4

       Request for FMLA Leave ("Employer Response"). (Barton Dep. at 27). The employee and her doctor were required to fill out the Certification of Medical Condition and Hilex Poly filled out the Employer Response. (*See e.g.*, Shields Dep. Ex. 3). Regional Manager Dave Brooks ("Brooks") or Lisa Barton ("Barton") filled out the Employer Response which indicated on its face how long the employee was approved for FMLA leave. (*See e.g.*, Shields Dep. Ex. 3).

7. If the employee were to need an extension of her FMLA leave beyond the six-month period, Hilex Poly would provide the employee with another Certification of Medical Condition. (Barton Dep. at 27; Shields Dep. at 102-03).

8. The North Vernon Inter-Office Memorandum dated April 9, 2002, written by Brooks and provided to Plaintiff upon her hire, stated, in relevant part:

> [A]ll employees who have requested FMLA Leave for Intermittent or chronic type conditions . . . must present evidence for each intermittent occurrence. This evidence, that their absence was caused by the medical [sic] certified condition, must include at a minimum:
>
> 1. the signature and address of the treating medical professional,
> 2. the date treated,
> 3. a general description of treatment or reason for absence,
> 4. the estimated time of recovery and/or the date of return to work.
>
> Employees will have 15 days from the initial date of their occurrence to submit the evidence. Failure to submit this required information on each occurrence will result in their being classified under our normal attendance policy.

### B. Plaintiff's Absences Result in Her Suspension

9. Plaintiff had two written warnings and a suspension between the time she was hired and December 3, 2004. (Plaintiff's Answer to Defendants' Amended Interrogatory No. 4).

### C. Plaintiff Takes Intermittent FMLA Leave

10. In or around December 2004, Plaintiff contracted Hepatitis C. (Deposition of Kristy Webster ("Webster Dep.") at 17). Among other things, this condition causes liver damage, jaundice, nausea, fatigue, and pain. (*Id*. at 35-36).

11. Shields, the manager of the North Vernon facility where Plaintiff worked, informed Plaintiff that if she needed FMLA leave for her condition, she needed to fill out a form with her doctor. (*Id*. at 19; Shields Dep. at 45).

12. Lisa Barton, the Human Resources Coordinator at the North Vernon facility, provided Plaintiff with the necessary paperwork through her immediate supervisor, Ronnie Law ("Law"). (Barton Dep. at 5, 21-22). Plaintiff and her doctor then completed that material, and on January 3, 2005, Plaintiff applied for intermittent FMLA leave from Hilex Poly. (Plaintiff Dep. at 19-20; Shields Dep. at 59-60 and Ex. 3).

13. Plaintiff's Certification of Medical Condition indicated that the expected duration of her illness was "unknown," and that she was able to work. (Shields Dep. Ex. 3).

14. Brooks from Hilex Poly approved Plaintiff's request for FMLA leave from December 31, 2004, to June 30, 2005, as noted on the Employer Response form.

6

(*Id.*).

15. Plaintiff took periodic leave during this period and provided evidence in support of her absences as required by the "North Vernon Inter-Office Memorandum." (*Id.* Ex. 31). Thus, Plaintiff was not charged with an occurrence for any days missed which were so certified. (Plaintiff Dep. at 21).

16. Before the expiration of Plaintiff's FMLA certification, Plaintiff filled out another Certification of Medical Condition for intermittent FMLA leave as the expected duration of her condition continued to remain "indefinite." (Affidavit of Kristy Webster ("Plaintiff Aff.") Ex. B).

17. Brooks approved Plaintiff's FMLA leave for another six months – from June 5, 2005, to December 5, 2005. ("Employer Response to Request for FMLA Leave" dated May 31, 2005[1]).

    **D.    Plaintiff's Additional Absences**

18. On May 21, 2005, Plaintiff incurred a .25 occurrence for leaving work early, and on July 7, 2005, Plaintiff received one occurrence for not reporting to work at all. (Plaintiff's Answer to Defendants' Amended Interrogatory No. 4; Shields Dep. Ex. 17).

19. When these 1.25 occurrences were added to the .5 occurrence carried over from her prior disciplinary action, Hilex Poly again suspended Plaintiff on August 9,

---

[1] This exhibit was filed with Hilex Poly's Reply and does not have an exhibit number attached.

        2005. (Shields Dep. Ex. 17).

20.     On October 18, 2005, she was tardy for work and received a .5 occurrence for leaving work early, and on October 30, 2005, she was tardy for work and received a .25 occurrence. (Plaintiff's Answer to Defendants' Amended Interrogatory No. 4; Shields Dep. Ex. 17).

21.     On November 10, 2005, Plaintiff failed to show up for work and provided no excuse, so she received an occurrence, and on November 19, 2005, she received a .5 occurrence for being tardy. (*Id*.).

22.     These incidents, when added to the previous carryover, totaled 2.5 occurrences, and this resulted in another suspension on January 9, 2006. (*Id*.).

        **E.**     **Plaintiff's FMLA Certification Ends**

23.     On December 5, 2005, the second certification period for Plaintiff's FMLA leave expired. ("Employer Response to Request for FMLA Leave" dated May 31, 2005).

24.     Barton testified that on December 2, 2005, she placed the relevant FMLA certification documentation in an envelope and placed it in Plaintiff's supervisor's (Law's) mailbox with a note stating that Plaintiff needed to recertify for FMLA leave. (Barton Dep. at 26-27).

25.     Plaintiff testified that she never received the paperwork. (Plaintiff Aff. ¶ 10).

26.     Plaintiff also testified that she forgot to fill out the required FMLA certification documentation and did not realize that her leave expired until the day of her

termination. (Plaintiff Dep. at 23-24).

### F.   Absences Leading Up to Plaintiff's Termination

27. Hilex Poly alleges that Plaintiff was late for work on December 5, 2005, and therefore incurred a .5 occurrence. (Plaintiff's Answer to Defendants' Amended Interrogatory No. 4). From December 17-22, 2005, Plaintiff was absent, so she received one full occurrence. (*Id.*). On January 9, 2006, Plaintiff did not work part of her mandatory overtime shift as required due to her suspension, and she was charged a .5 occurrence. (*Id.*). And on January 27 and 28, 2006, she was again missing from work and received another full occurrence. (*Id.*).

28. Hilex Poly terminated Plaintiff's employment on February 13, 2006, on grounds of excessive absences. (Shields Dep. at 52, 71-72 and Ex. 26).

29. Plaintiff testified that upon her termination, Shields informed her that her absences did not fall under the FMLA because she did not fill out the required FMLA documentation. (Plaintiff Dep. at 51, 59). She also testified that he told her he was "sorry and that he had reviewed my file and realized I had a condition, but it was not getting any better and it wasn't going away." (*Id.* at 60).

30. Hilex Poly's record of the absences discussed immediately above show that Plaintiff had a doctor's slip for the occurrences incurred on December 17, 21, and 22, 2005, and for January 27 and 28, 2006. (Shields Dep. Exs. 29-30). The attendance record also reflects that on December 12, 2005, Plaintiff was "tardy" with an arrow pointing to the word "medical." (*Id.*).

31. Plaintiff has also produced a copy of a doctor's slip dated December 22, 2005, which states that Plaintiff had been under the care of the doctor from December 17, 2005 through December 22, 2005 due to "jaundice – infectious." The note also shows a "x" by the words "may take" and in the lines below shows what appears to be the phrase "H-C V of FMLA." (Plaintiff Aff. Ex. C).

32. Plaintiff's doctor's slip dated January 27, 2006 states that Plaintiff was under a doctor's care from January 27-30, 2006 and is signed by "Dr. Stanley." (*Id*. Ex. D).

33. Any additional facts necessary to the resolution of this motion will be addressed below.

**III.  Discussion**

The FMLA establishes two categories of protection for employees. First, it provides for "prescriptive protections that are expressed as substantive statutory rights." *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). The Act provides that an eligible employee may take up to twelve weeks of unpaid leave in any twelve-month period for various reasons, including a "serious health condition." 29 U.S.C. § 2612(a)(1). Leave may be taken continuously or on an intermittent basis. 29 U.S.C. § 2612(b). To protect these rights, the FMLA declares it "unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any rights provided" by the FMLA. 29 U.S.C. § 2615. An employee alleging a deprivation of substantive rights must demonstrate by a preponderance of the evidence only an

entitlement to the disputed leave. *King*, 166 F.3d at 891. In such cases, the intent of the employer is irrelevant. *Id*.

The Act also contains an anti-discrimination component that prohibits an employer from discriminating or retaliating against an employee who requests or takes leave pursuant to statute. *Id.* Moreover, "the employer may not consider the taking of FMLA leave as a negative factor in employment actions." *Id*. In these types of claims, the intent of the employer is relevant and, in the absence of direct evidence of intentional discrimination, the court analyzes these claims using the familiar *McDonnell Douglas* framework. *Id*.

> **A.    Plaintiff's Substantive FMLA Claim**

In Count I of Plaintiff's Amended Complaint, Plaintiff asserts that Defendants violated her substantive FMLA rights by denying her FMLA leave to which she was entitled and by terminating her employment after she missed work due to her health condition. Defendants move for summary judgment on this claim, and Plaintiff cross-moves for partial summary judgment on her FMLA interference claim. As these claims are mirror images of one another, the court will address both parties' arguments below.

The primary dispute among the parties is whether Defendants adequately apprised Plaintiff of the need to recertify for her FMLA leave in December 2005. Plaintiff attacks Hilex Poly's procedural requirements, contending that on their face, the six-month recertification requirement violates the FMLA. Plaintiff also argues that Defendants failed to provide Plaintiff notice of her need to recertify, failed to give Plaintiff at least

fifteen days to recertify, and failed to provide her notice of the consequences of any failure to recertify.

The regulations written by the Department of Labor provide that "[a]n employer must give notice of a requirement for medical certification each time a certification is required. . .". 29 C.F.R. § 825.305(a). With respect to chronic or permanent/long-term conditions which require continuing supervision by a health care provider, an employer may require, either orally or in writing, that the employee submit a recertification by a health care provider "no more often than every 30 days." 29 C.F.R. § 825.308(a); 29 C.F.R. § 825.305(a). The employer must give the employee at least fifteen days to submit such recertification. 29 C.F.R. § 825.308(c). "At the time an employer requests certification, the employer must also advise the employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 C.F.R. § 825.308(d). "If an employee fails to provide a medical certification within a reasonable time under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave." 29 C.F.R. § 311(b).

As shown above, the regulations provide that an employer can require an individual suffering from a permanent or long-term illness like Plaintiff to recertify as often as every thirty days. Thus, Hilex Poly's requirement that Plaintiff recertify every six months does not, on its face, violate the FMLA.

The court next turns to the issue of notice. The facts in this case reflect that on

12

December 2, 2005, Barton put a copy of the Certification of Medical Condition form in an envelope with Plaintiff's name on it and placed the envelope in Plaintiff's supervisor's mail box. Plaintiff claims that she never received the certification documentation. There being no other evidence, this issue comes down to Defendants' word against Plaintiff's. The court therefore finds a genuine issue of material fact exists as to whether Defendants put Plaintiff on notice of her need to recertify.

In an effort to obfuscate the issue, Defendants contend that even if Plaintiff did not receive the required FMLA certification documentation, she cannot now claim a lack of notice as she was clearly aware of Hilex Poly's six-month recertification requirement. The court finds this argument unavailing. The regulations are clear that it is the employer's burden to put the employee on notice of his or her need to recertify. *See* 29 C.F.R. § 825.305(a). The fact that Plaintiff was aware of the six-month recertification requirement does not alleviate Hilex Poly's notice requirement.

For the reasons stated above, Defendants' motion for summary judgment on Count I of Plaintiff's Amended Complaint is **DENIED**, and Plaintiff's Counter Motion for Partial Summary Judgment is **DENIED**.

### B. Retaliation

In Count II of Plaintiff's Amended Complaint, Plaintiff alleges that Defendants retaliated against her for taking FMLA leave. Plaintiff proceeds under the direct method of proof, and relies solely upon circumstantial evidence. Thus, to prevail, she must produce evidence that (1) she engaged in statutorily protected activity; (2) she suffered an

adverse employment action by the employer; and (3) there is a causal connection between the protected activity and the adverse action. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007); *Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006) (Title VII methods of proof apply to FMLA retaliation claims). Circumstantial evidence may "includ[e] evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)).

The evidence reflects that Plaintiff engaged in protected activity when she sought and obtained intermittent FMLA leave. Plaintiff also suffered an adverse employment action when she was terminated on February 13, 2006. Thus, the only issue in dispute is whether there is a causal link between Plaintiff's intermittent FMLA leave and her termination.

It is undisputed that Plaintiff's FMLA certification expired on December 5, 2005. Viewing the evidence in the light most favorable to Plaintiff, Defendants remained silent after Plaintiff's six-month certification expired and allowed Plaintiff to incur occurrences that otherwise would have been covered by FMLA. (Plaintiff Aff. Exs. C, D; Shields Dep. Exs. 29-30). Plaintiff therefore had no idea that she was accumulating occurrences for her otherwise FMLA-related absences until the date of her termination. (Plaintiff Dep. at 29). Moreover, Hilex Poly terminated her knowing that nothing about her present situation would probably ever change, as noted by Shields ("your situation is not going to

14

improve"), and despite the fact that she had doctor's slips to substantiate her absences in December 2005 and January 2006. In fact, her doctor's slip dated December 22, 2005, covering her absences from December 17-22, 2005, specifically mentioned that those absences were FMLA-related. (Plaintiff Aff. Ex. C). Finally, Plaintiff's final absences on January 27-28, 2006, occurred just two weeks prior to her termination. The court finds these facts provide sufficient evidence of a causal connection between her termination and her legitimate need for intermittent FMLA leave. Defendants' Motion for Summary Judgment on Count II of Plaintiff's Amended Complaint is therefore **DENIED**.

    **C.**    **ADA**

In Count III, Plaintiff alleges that Defendants regarded her as disabled due to her Hepatitis C. In Plaintiff's Response, she concedes that Shields cannot be individually liable on her ADA claim; thus, the court will proceed with an analysis of her claim only against Hilex Poly.

The term "disability" is defined under the ADA to mean, with respect to an individual:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). In order to fall within the ADA's protections, a plaintiff asserting a "regarded as" claim must show that the defendant believes she is substantially limited in

15

a major life activity. *Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002). "[I]f the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 938 (7th Cir. 2007) (quoting *Mack*, 308 F.3d at 782).

Here, Plaintiff has provided no evidence that Hilex Poly thought Plaintiff was unable to perform the essential functions of her job as a machine operator. Indeed, Shields testified that when Plaintiff informed Shields of her condition, she did not ask that her job change in any way and that she performed her job to the same degree after the onset of her condition as she did before. Moreover, Plaintiff admits she was able to perform the physical tasks of operating a machine in the Hilex Poly plant. (Plaintiff Dep. at 40). In short, there is no evidence that Plaintiff could not perform her job or engage in any other major life activity or that Hilex Poly thought otherwise. Accordingly, the court **GRANTS** Defendants' Motion for Summary Judgment on Count III of Plaintiff's Amended Complaint.

## IV.  Conclusion

The court finds an issue of fact remains with respect to whether Defendants provided Plaintiff with notice of her need to recertify for a six-month extension of her FMLA leave. The court further finds an issue of fact as to whether Defendants retaliated against Plaintiff for exercising her right to take FMLA leave. Lastly, the court finds no issue of fact as to whether Hilex Poly regarded Plaintiff as disabled. Accordingly, the

court **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment

(Docket # 58), and **DENIES** Plaintiff's Counter Motion for Partial Summary Judgment

(Docket # 64).

**SO ORDERED** this 10th day of September 2007.

                                                                           RICHARD L. YOUNG, JUDGE
                                                                           United States District Court
                                                                           Southern District of Indiana

Electronic Copies to:

Caren L. Pollack
MANDEL POLLACK & HORN
cpollack@mplaw.net

Mark Richard Waterfill
DANN PECAR NEWMAN & KLEIMAN
mwaterfill@dannpecar.com